**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| DENISE ZENCKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CAUSE NO. 2:14-CV-371 |
| vs. ) | |
| ) | |
| LAKE COUNTY, INDIANA, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. | |

### **OPINION AND ORDER**

This matter is before the Court on the "Defendant Sheriff John Buncich Motion to Bifurcate § 1983 Monell Claims and Stay Discovery and Trial on Those Claims," filed by Defendant, Sheriff John Buncich, solely and in his official capacity as Lake County Sheriff, on February 3, 2016 (DE #23). For the reasons set forth below, the motion (DE #23) is **DENIED**.

BACKGROUND

Plaintiff, Denise Zencka, filed a complaint in this case on October 10, 2014 (DE #1). Her claims stem from her arrest on January 10, 2013, for an outstanding warrant issued in Plaintiff's name.

In 2012, Zencka was diagnosed with thyroid cancer. (Compl. ¶ 10.) She claims that due to her treatment, Zencka was unable to work from June 2012 until September 2012, and was staying with her

parents in Florida where she was recovering from thyroid cancer treatment. The complaint also alleges that during that time, Zencka was either unaware and/or unable to attend small claims court hearings in Lake County, Indiana, which where claims largely initiated due to her inability to pay medical bills incurred because of her cancer treatment. (Compl. ¶ 11.) As a result of missing court dates, warrants were issued for Zencka's arrest and placed with the Lake County Sheriff's Department ("LCSD") for "failure to appear - small claims" and/or "contempt of court civil." One of the warrants was issued in July 2012, and two were issued in September 2012. (*See* "Lake County Jail Arrest Record," Pl.'s Ex. 1.)

In October 2012, Zencka retained an attorney who initiated a Chapter 7 bankruptcy filing on her behalf, and the attorney forwarded notices to the LCSD to notify it of the bankruptcy filing and the automatic stay on all collection proceedings, including the civil arrest warrants issued in the Lake County small claims cases. (Compl. ¶¶ 13-17.)

Despite being notified of the bankruptcy and automatic stay of the civil warrants, the LCSD dispatched officers to Zencka's home to arrest her on January 9, 2013. (Compl. ¶ 19.) Zencka told the officers that the warrants were related to outstanding medical bills, and there was an automatic stay in place due to her bankruptcy filing. (Compl. ¶¶ 22, 23.) Zencka, still dressed in

2

pajamas, was taken into custody in the presence of her 8 year old autistc son, 4 year old son, and 12 year old daughter. (Compl. ¶ 24.)

Zencka alleges mistreatment in the Lake County Jail during her overnight incarceration, including she was verbally abused, denied medicine, because she was unable to climb the stairs to the women's section, she was held in a men's unit with glass walls which exposed her toilet use and everything she did to the other male inmates, and she was denied feminine hygiene products. (Compl. ¶¶ 28-39.)

Plaintiff defines "Defendants" in her complaint as "Lake County, Indiana; Lake County Board of Commissioners; Sheriff John Buncich, solely in his official capacity as Lake County Sheriff; Willie Stewart, solely in his official capacity as Lake County Jail Administrator; Officers John Doe, Jeff Doe, Jack Doe, and other Unknown Parties; Jointly, Severally, and Individually." (Compl., p. 1.)

Plaintiff asserts multiple claims against Officers John Doe, Jeff Doe, Jack Doe, Jane Doe, and other unknown parties, jointly, severally, and individually (herein after referred to as "individually-named Defendant officers"). The allegations include:

- Count I – Section 1983 claim of unlawful and malicious arrest, detention, and confinement of Plaintiff in violation of the

Fifth and Fourteenth Amendments.

- Count II – Section 1983 claim of failure to track and recall warrant in violation of the Fourth and Fourteenth Amendments.

- Count III- Section 1983 claim of unlawful service and enforcement of invalid bench warrant in violation of the Fourth and Fourteenth Amendment.

- Count IV – Section 1983 claim alleging policy of deliberate indifference to medical needs in violation of Eight Amendment.[1]

- Count V- 42 U.S.C. 12132 American with Disabilities Act & Eighth Amendment claim.

- Count VI- Section 1983 claim of lack of proper supervision and control in violation of Fourth and Fourteenth Amendments.

- Count VII- A section 1983 claim of cruel and unusual punishment in violation of the Eight Amendment.

- Count VII (misnumbered by Plaintiff within her Complaint) – Violation of Indiana Bill of Rights/Indiana Constitution.

- Count IX – State Law Torts/Common Law Torts.

(DE #1.)

To the extent Plaintiff seeks damages against Defendant Sheriff John Buncich in his official capacity, her claim is, in effect, an action against the Lake County Sheriff's Department, a municipality. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Smith v. County of Kosciusko*, No. S91-5(RDP), 1991 WL 261766, at *2 (N.D. Ind. Nov. 15, 1991). Plaintiff also seems to

---

[1] Plaintiff titles this claim as a violation of the Eighth Amendment, but states in paragraph 46 of her Complaint that the actions alleged violated the Fourth and Fourteenth Amendments and does not mention the Eighth Amendment within the body of Count IV.

4

assert section 1983 *Monell* claims against Defendant, Sheriff Buncich, and the Sheriff's Department within all of the section 1983 counts by stating that "the need for more or different policies and customs is so obvious and the inadequacy is so likely to result in a violation of constitutional rights." (Compl. Count I ¶ 41, Count II ¶ 43; Count III ¶ 45; Count IV ¶ 47; Count VI ¶ 53; Count VII ¶ 59.)

Defendant, Sheriff John Buncich, requests that the Court bifurcate all of Plaintiff's claims against the individually-named Defendant officers from Plaintiff's section 1983 *Monell* claims against Defendant Sheriff John Buncich and the Sheriff's Department and to stay discovery and trial on the *Monell* claims until and unless the Plaintiff first proves an underlying constitutional violation against any of the individually-named Defendant officers.

DISCUSSION

Federal Rule of Civil Procedure 42(b) states, in relevant part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Bifurcation may be appropriate if one or more of the Rule 42(b) criteria is met. *See, e.g., Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). Courts have broad discretion in deciding whether to bifurcate issues presented

5

in a case or to try them separately. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Indeed, the district court's exercise of its discretion to bifurcate will be set aside on appeal "only upon a clear showing of abuse." *Treece*, 213 F.3d at 364-65. Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *see also Carr v. City of N. Chicago*, 908 F.Supp.2d 926, 927 (N.D. Ill. 2012). The decision of whether to bifurcate is a case-specific analysis. *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007).

Defendant Buncich argues that bifurcation will be convenient for the parties, it will avoid prejudice, expedite the matter, and economize resources for the Court and parties during the discovery process and trial. (DE #23 at 4.) However, in response, Plaintiff argues that bifurcation would be highly prejudicial and highly impractical. (DE #24 at 5.)

Defendant Buncich first argues that the Fourth Amendment claims are particularly suited to bifurcation, citing Illinois district court cases. *See, e.g., Carr*, 908 F.Supp.2d at 932 ("In the Fourth Amendment context of false arrest and excessive force claims, courts in this District tend to grant bifurcation of *Monell* claims where the municipality offers a certification of entry of judgment."); *Medina v. City of Chicago*, 100 F.Supp.2d 893, 894 (N.D. Ill. 2000) ("There is no question that a district court has

the discretion to sever a *Monell* claim against a municipality from claims against individual police officers and stay litigation of the *Monell* claim until the rest of the case is resolved" and see Illinois cases cited therein). Clearly, there are many Illinois district court cases undertaking this analysis, and a number order bifurcation, but "[n]othing in these cases, however, *requires* bifurcation in every case. The issue is whether this Court should exercise its discretion to bifurcate the claims in this particular case." *Medina*, 100 F.Supp.2d at 894-95 (emphasis in original).

Defendant argues bifurcation is appropriate in the context of the Fourth Amendment because "[i]f there is no excessive force, there is no injury to constitutional rights" and "Section 1983 actions are well suited for bifurcation because unless a plaintiff proves an officer violated his constitutional rights, the *Monell* claim against the municipality will fail as a matter of law, and the litigation will be over without the need for discovery or trial on the Monell claims." (DE #23 at 5.) It is true that Fourth Amendment claims are evaluated under the standard of objective reasonableness and require no culpable mind set. *Graham v. Connor*, 490 U.S. 386, 397 (1989). However, Plaintiff has stated other claims, including under the Fifth, Eighth, and Fourteenth Amendment, and state law claims, and the Seventh Circuit has stated that municipal liability may be found even in the absence of underlying individual liability. *See Thomas v. Cook Cnty.*

7

*Sheriff's Dep't*, 588 F.3d 445, 456 (7th Cir. 2009) (holding "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict.").

In the complaint, Plaintiff asserts Fourth, Fifth, and Fourteenth Amendment claims, alleging her constitutional rights were violated by and through the actions of the Lake County Sheriff's Department and Sheriff John Buncich and alleges:

> The need for more or different procedures and customs is so obvious and inadequacy so likely to result in the violation of constitutional rights, that Lake County policymakers, including the Lake County Board of Commissioners, Lake County Sheriff, John Buncich, and Lake County Jail Administrator, Willie Stewart, can reasonably be said to have been deliberately indifferent to the constitutional rights of citizens, including Plaintiff.

(Compl. Count I ¶ 41, Count II ¶ 43; Count III ¶ 45; Count IV ¶ 47; Count VI ¶ 53; Count VII ¶ 59.)[2] In response to the allegations in the complaint, Defendant Buncich and the individual officers set forth the affirmative defense of immunity. (Buncich Answer, DE #12 at 19; Individual Defs.' Answer, DE #9, at 29.)

---

[2] Defendant Buncich claims these are "run-of-the-mill allegations of failure to train and/or supervise," which differ from the specific allegations in *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2010 WL 1754028, at *3 (N.D. Ind. Apr. 29, 2010) (declining to bifurcate discovery at the early stage of the proceedings). It is true that Plaintiff's claims here are not as detailed as those in *Miller*, but they are not totally generic when read with the entire complaint, and the *Miller* court denied bifurcation for other reasons as well, including that Defendant did not show how complying with discovery requests would be unduly burdensome or costly. *Id.*

Therefore, an adverse finding as to Plaintiff's individual claims does not necessarily dispose of the *Monell* claims.

As the Court stated in *McIntosh*:

> At this early stage of litigation, prior to depositions of any individual defendants and the production of policy and training documents, it is premature to unequivocally state that there can be no municipal liability in the absence of underlying individual liability. Based on the parties' current positions, however, it is plausible to understand a situation in which differing verdicts on these claims would be compatible - namely based on the Defendants' assertion of immunity. Individual public employees are entitled, where applicable, to the defense of qualified immunity, but municipalities are not.

*McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *8 (N.D. Ill. Sept. 2, 2015)(citations omitted). Indeed, Plaintiff argues that on an individual level, a patrolman could assert he was acting in good faith when he took Plaintiff into custody because his orders showed he was serving an active warrant per the LCSD documentation. (DE #24 at 6.) As noted in *McIntosh*, "[a]s such, bifurcation may not avoid a second trial if the officers are immune, and the second trial (of the *Monell* claim) would likely duplicate the first trial against the individual officers." *Id.* *See, e.g., Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011) (denying bifurcation because if the officers were found not liable based on their qualified immunity defense, "there would still be a need for a second duplicative trial as to the Village's liability"); *Medina*, 100 F.Supp.2d at 896

(denying bifurcation because, among other things, the individual officers asserted qualified immunity).[3]

The Court is well aware of case law finding that discovery of *Monell* claims "can add significant time, effort, and complications to the discovery process." *Medina*, 100 F.Supp. 2d at 895; *see also Readus v. Dercola*, 09 C 4063, 2012 WL 1533167, at *3 (N.D. Ill. May 1, 2012). However, bifurcation at this stage may also add unnecessary complexity and confusion. "A stay of *Monell* discovery could, and often does, give rise to arguments about whether Plaintiffs discovery requests relate to his *Monell* claim or to his other claims." *Cadle* v. City of Chicago, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015). The Court agrees with Plaintiff's concern that if bifurcation was granted, it would be possible that questions asked of individuals in which departmental policy, procedure, or protocol would be discussed, could be objected to, and that costly discovery disputes could ensue. (DE

---

[3]In response to *Thomas* and the concern of qualified immunity, Defendant Buncich cites to *Saunders v. City of Chicago*, No. 12-CV-9158, 2015 WL 7251938, at *9 (N.D. Ill. Nov. 2015) (granting bifurcation even though recognizing "such a situation could arise in this case should Plaintiffs be unable to recover from the Defendant Officers because of their qualified immunity, but Plaintiffs could still recover from the municipality, which lacks such a protection.") However, in *Saunders*, the Court specifically stated it was "not persuaded in either direction on this issue" because it believed the concern was premature. *Id.* There are, of course, other district courts that have been swayed by this argument in denying bifurcation. *See, e.g., McIntosh*, 2015 WL 5164080, at *8; *Clarett*, 2011 WL 37838, at *1-3; *Medina*, 100 F.Supp.2d at 896.

#24 at 10-11.) Plaintiff contends the systemic and departmental issue regarding the tracking and removal of warrants, and the alleged false arrest based upon the failure to remove the warrant, the failure to supervise the tracking and removal of warrants, and the claims of public cruel and unusual punishment are intertwined with the claims against the individuals.

While Defendant Buncich claims litigating the *Monell* claims will be burdensome and time consuming, and "an extraordinary amount of money must be spent in order to prepare for such claims," (DE #23 at 6) "[h]yperbolic words used to characterize an unspecified burden are not enough. This sort of non-specific assertion of burden routinely is rejected as a basis to deny or limit discovery under Federal Rule of Civil Procedure 26(b)(2)(C)(iii)." *Cadle*, 2015 WL 6742070, at *2 (citations omitted). Moreover, as the Court noted in *Cadiz*, "[t]o the extent that plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can and will tailor them as necessary, as other courts have done." *Cadiz*, 2007 WL 4293976, at *3.

Defendant Buncich's claims that the individually-named officers will suffer prejudice at trial are premature. As other courts have noted, "judges often address and can mitigate potential prejudice that might arise from a unitary trial involving multiple defendants and multiple claims through the use of limiting instructions, motions in limine and the Federal Rules of Evidence."

*Id.* (citing *Giles v. City of Chicago*, No. 12-CV-6746, 2013 WL 6512683, at *2 (N.D. Ill. Dec. 6, 2013); *Elrod v. City of Chicago*, Nos. 06 C 2505, 07 C 203, 2007 WL 3241352, at *7 (N.D. Ill. Nov. 1, 2007); *Medina*, 100 F. Supp. 3d at 897; *see also Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *13 (N.D. Ill. Apr. 9, 2012) ("The Court has at its disposal an[y] number of tools to properly order and organize a trial that will not be unfairly prejudicial to any of the Defendants"). These tools should be sufficient to address issues of potential prejudice at trial and if not, the Court may still order a bifurcation of trial at a later stage.

Ultimately, Defendant Buncich has not clearly showed that he would be prejudiced if bifurcation is denied. Here, whatever efficiencies that might be gained by bifurcation are offset by the potential for confusion of issues and discovery, and inefficiency in delaying the case and possibly prejudicing Plaintiff during that delay. *See, e.g., Miller,* 2010 WL 1754028, at *3 (quoting *Cadiz*, 2007 WL 4293976, at *5) (stating a "stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date"). Finally, the Court recognizes that Plaintiff is the author of her complaint, and she has the right to select the claims she brings, including *Monell* claims.

For all of these reasons, "Defendant Sheriff John Buncich Motion to Bifurcate § 1983 Monell Claims and Stay Discovery and

Trial on Those Claims," filed by Defendant, Sheriff John Buncich, solely and in his official capacity as Lake County Sheriff, on February 3, 2016 (DE #23), is **DENIED**.

CONCLUSION

For the reasons stated above, the "Defendant Sheriff John Buncich Motion to Bifurcate § 1983 Monell Claims and Stay Discovery and Trial on Those Claims," filed by Defendant, Sheriff John Buncich, solely and in his official capacity as Lake County Sheriff, on February 3, 2016 (DE #23), is **DENIED**.

**DATED: May 24, 2016**          **/s/ RUDY LOZANO, Judge**
                                  **United States District Court**